Argued May 15; reversed June 25, 1935

# STANTON *v.* HAZELWOOD CONFECTIONERY COMPANY ET AL.

(46 P. (2d) 96)

*Leroy Lomax,* of Portland (Lomax & Lomax, of Portland, on the brief), for appellant.

*Nicholas Jaureguy,* of Portland (Cake & Cake and Jaureguy & Tooze, all of Portland, on the brief), for respondent Van De Kamp's Holland Dutch Bakers, Inc.

*W. H. Morrison,* of Portland, for respondent Electrical Products Corporation of Oregon.

KELLY, J. Defendant Van De Kamp's Holland Dutch Bakers, Inc., hereinafter referred to as the Bakers Company, was the lessee of the two upper floors of a three-story building owned by the defendant, Hazelwood Confectionery Company. The lease provided that the Bakers Company might install and maintain an electric sign thereon. The building is located on the southeast corner of East Broadway and Wheeler streets in the city of Portland.

Defendant Electrical Products Corporation of Oregon, hereinafter referred to as the Electrical Company, entered into a contract with the Bakers Company to install and maintain said electric sign for 60 months in consideration of the payment of $25 per month.

A tier of tiling surmounted the fire wall protecting the roof of said building. In installing said sign, the Electrical Company placed timbers across said tiling which were used in lowering the sign to its proper place. While this work progressed, a broken portion of tile fell from the fire wall to the pavement. This occurred on the 2d or 3d of March, 1932.

The plaintiff's injuries were sustained on the 27th day of June, 1932. As she was walking on the sidewalk in front of said building, a piece of broken tile fell from the roof and struck her.

The question here presented is whether any substantial evidence is shown by the record of actionable negligence on the part of either the Bakers Company or the Electrical Company.

After the trial court had sustained a motion for involuntary nonsuit, as to the two defendants above named, plaintiff took an order of voluntary nonsuit as to the defendant, Hazelwood Confectionery Company.

■ The incident of the broken tile falling to the pavement, while the work of installing the sign was in progress, affords one ground of controversy. The Electrical Company argues that while an inference may be drawn therefrom that the Electrical Company caused it to become loosened and to fall, nevertheless, in order to infer therefrom that the Electrical Company caused any other tiling on said fire wall to become loosened, an inference must be based upon an inference.

We are unable to concur in this view. We think that an inference, that the tiling over which the Electrical Company placed their timbers was loosened and broken, may be drawn from the immediate falling of a piece of broken tile, from the somewhat fragile nature and character of the tile and from the act of placing timbers thereon from which the sign was lowered.

On argument, it was suggested that the record discloses an intervening cause in that another electric sign was installed on said building just beneath the Bakers Company's sign. The only evidence on the subject indicates that the Electrical Company installed both signs.

We quote from the cross-examination of witness Gibson:

"Q. So you think they put up the Wood sign first? A. Yes, sure.

Q. I want to ask you whether at the former trial you were ask (asked) the following questions and made the following answers: 'Question: Then the Van de Kamp sign went up first and later on they put up the Wood sign? Answer. I couldn't say which way they worked it.' Did you make such an answer to such a question?

A. I couldn't say.

Q. You don't remember do you? A. No.

Q. The next question: 'Well when you took up the stuff from the sidewalk that day, was the Wood sign already up? Answer. I couldn't say; I don't believe it was there.' Did you so testify at the former trial?

A. I don't remember it.

Q. And then the following question: 'Then if they were working on the Van De Kamp sign at the time you picked it up, and you say they were, don't you? Answer. Yes. Question: Then, they must have put up the Wood sign after they put up the Van De Kamp sign; isn't that right? Answer: They probably did.' Did you so testify?

A. I don't remember any such thing as that."

The foregoing cross-examination was conducted by the attorney for the Bakers Company. In the cross-examination by the attorney for the Electrical Company, the following question and answer appear:

"Q. Then the testimony you gave at the former trial was the truth was it?

A. As far as I know it was."

Construing the testimony most strongly against defendants, the Electrical Company broke and loosened the tiling, left it in that condition, failed to return upon request to repair it and permitted it to remain in such defective and hazardous condition.

■ In her complaint, among other things, plaintiff alleges:

"That said defendants, Hazelwood Confectionery Co., Van De Kamp's Holland Dutch Bakers Inc., and Electrical Products Corporation of Oregon, and each of them carelessly and negligently and in disregard of the life and safety of the public, and particularly of this plaintiff, allowed and permitted said broken, loosened and misplaced tiles to be and remain in such condition upon said fire wall and to be and remain in such dangerous, unsafe and hazardous condition from the time the same were so broken, loosened and misplaced up to and until the time plaintiff sustained serious and permanent injuries, as hereinafter set out and alleged, and that said defendants, and each of them, did carelessly and negligently fail, neglect and omit to repair or replace said broken, loosened and misplaced tiles, or any of them, and carelessly and negligently failed and neglected to make any repairs of said broken, loosened and misplaced tiles, or any of them, or to in any manner replace the same, or to in any manner safeguard said tiles, or any of them or to devise or use any means to prevent said tiles or any thereof, from falling from the top of said fire wall, notwithstanding, said defendants, and each of them, by the exercise of ordinary care and prudence could have known, and did know, that said tiles were so broken, loosened and misplaced and were in said unsafe, dangerous and hazardous condition and likely to fall from the top of said fire wall and to the said sidewalks adjacent to said building."

Plaintiff also alleges:

"That the defendant Van De Kamp's Holland Dutch Bakers, Inc., continued to use said second and third floors of said building at all times after said tiles were so broken, loosened and misplaced and after the same had become so dangerous, hazardous and unsafe, and did during all said times, with the knowledge and consent of defendant, Hazelwood Confectionery Company, run and operate said electrical motors and mixers

and did operate said heavy trucks and equipment on said two upper floors of said building and thereby caused said building, walls and tiles to jar, shake and vibrate, and that said building, walls and tiles by reason of said conditions were unfit and unsafe for such uses, and defendants, and each and all of them, by the exercise of ordinary care and prudence could have known, and did know, of such conditions.''

In support of the foregoing allegations of negligence on the part of the Bakers Company, there is the testimony of witness Macgregor, who was employed by the Electrical Company, when the sign of the Bakers Company was installed, to the effect that two or three days after the work of installing said sign was completed, the manager of the Bakers Company called the Electrical Company by the telephone and said that the tile was broken on the wall of the roof; that some pieces had fallen to the sidewalk and that he wanted the Electrical Company to fix it up right away.

There is also testimony of witness Wood, who was the tenant on the ground floor of the building in question, to the effect that the Bakers Company operated dough mixers, which are regular baking machines, by means of electrical power and that said company also used bakery trucks.

We quote from the testimony of this witness: ·

''The Court: What effect the machinery had, if any. (Mr. Lomax) What, if anything, did occur there in the way of shaking or vibration of the building while you were there?

A. Well there was plenty of shaking and vibration, all right.

Q. How is that?

A. There was plenty of shaking and vibrations.

\* \* \* \* \*

Q. What happened to your room when they were running that machinery?

A. Broke plaster from the ceiling.''

Witness Leroy Lomax Jr. and Louis Schnitzer identified photographs, taken in the summer of 1932, showing the condition of the tiling on the fire wall and these witnesses also described its condition which tended to show that it had not been repaired.

The privilege granted in its lease to the Bakers Company to install and maintain an electrical sign carried with it the right to go upon any part of the building necessary for such installation and maintenance. It also carried with it the duty of exercising ordinary care to preserve the building from becoming unsafe or dangerous by reason of such installation or maintenance. It is not the immediate result of the negligence of an independent contractor with which we are dealing. It is a failure on the part of the Bakers Company to correct a known defective and dangerous condition coupled with a continuing use of the building in such a way as to increase the hazard caused thereby. We think that the use of machinery and trucks causing the building to shake and to vibrate to the extent of breaking the plaster in the ceiling below, while the tiling on the fire wall above was broken and loosened, might be deemed to be negligence.

There was substantial evidence tending to prove negligence on the part of both defendants, and, hence, the court erred in granting an order of involuntary nonsuit.

The judgment of the circuit court is reversed and the cause remanded for such further proceedings as are not inconsistent herewith.

CAMPBELL, C. J., not sitting.

BAILEY, J., dissents.